IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| BWAY CORPORATION, d/b/a MAUSER PACKAGING SOLUTIONS, | : : : | Case No. 1:24-cv-179 |
| Plaintiff, | : : | Judge Matthew W. McFarland |
| v. | : : | |
| INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE AND FURNITURE WORKERS, COMMUNICATION WORKERS OF AMERICA, AFL-CIO, LOCAL 84729, | : : : : : : : | |
| Defendant. | : : | |

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment to Vacate the Arbitration Award (Doc. 11) and Defendant's Motion for Summary Judgment to Enforce the Arbitration Award (Doc. 12). Both matters have been fully briefed (Docs. 11-16). Thus, this matter is ripe for the Court's review. For the reasons below, Plaintiff's Motion for Summary Judgment to Vacate the Arbitration Award (Doc. 11) is **GRANTED** and Defendant's Motion for Summary Judgment to Enforce Arbitration Award (Doc. 12) is **DENIED**.

## FACTS

### I. The Grievance

Plaintiff BWAY Corporation operates a manufacturing facility in Cincinnati, Ohio.

(Arbitration Award, Doc. 4, Pg. ID 250.) Defendant International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Communication Workers of America, ADL-CIO, Local 84729, is a labor organization that represents some of Plaintiff's employees. (*Id.*) As part of its representation, Defendant entered into a collective bargaining agreement ("CBA") with Plaintiff during the time of the alleged dispute. (*Id.*) Section 14(H) of the CBA permits Plaintiff to determine and enforce reasonable work rules and regulations. (CBA, Doc. 1-2, Pg. ID 62.) Section 14(B) further states that, unless otherwise restricted by the CBA, Plaintiff retains the right to "layoff, suspend or to dismiss [e]mployees." (*Id.*) Accordingly, Plaintiff implemented an attendance policy where employees who missed work were assigned absenteeism points. (Attendance Policy, Doc. 1-3, Pg. ID 110.) Employees who reached eight points were subject to termination. (*Id.* at Pg. ID 112.)

On April 6, 2023, employee Paul Anderson called into work sick. (Arbitration Award, Doc. 4, Pg. ID 251.) Plaintiff, claiming the absence as unexcused, issued Anderson an absenteeism point, raising his total points to 8.5. (*Id.*) Anderson then met with Plaintiff's human resources manager who recommended that Anderson attempt to have his most recent absenteeism point retroactively removed. (*Id.*) Afterward, Anderson attempted to certify his leave under the Family and Medical Leave Act ("FMLA") by applying to Plaintiff's third-party administrator, The Hartford. (*Id.* at Pg. ID 252.) The parties agreed that if Anderson provided the necessary FMLA certification to The Hartford within 15 days, Plaintiff would revoke his additional absenteeism point. (Defendant's Response to Undisputed Facts, Doc. 14, at ¶¶ 16, 18.) The Hartford,

2

however, never received Anderson's certification. (*Id.* at ¶ 22.) On May 11, 2023, Plaintiff terminated Anderson for violating the attendance policy. (*Id.* at ¶ 31.)

## II. The Arbitration

On May 15, 2023, Defendant filed a grievance challenging Anderson's termination. (Arbitration Award, Doc. 44, Pg. ID 253.) The grievance, which requested that Anderson be "made whole" for "any hours missed due to his unjust firing" was brought to arbitration. (Grievance, Doc. 4, Pg. ID 261.) The parties submitted the following issue to the Arbitrator: "Was there just cause for the termination of Paul Anderson? If not, what shall be the remedy?" (Arbitration Award, Doc. 4, Pg. ID 249.) The CBA, which was presented to the Arbitrator, dictated the arbitration procedure. (CBA, Doc. 1-2, Pg. ID 56.) The CBA provided that the Arbitrator may not "grant any relief that was greater than that which was specifically requested in the Grievance when it was reduced to writing." (*Id.* at Pg. ID 58.) It also expressly prohibited the arbitrator from modifying the terms of the CBA. (*Id.*)

At the conclusion of the arbitration proceedings, the Arbitrator reinstated Anderson to his former position with full back pay except for one week: the equivalent of a suspension Anderson should have received if the attendance policy was "more fairly applied." (Arbitration Award, Doc. 4, Pg. ID 259.) In reaching this award, the Arbitrator noted that Anderson's absence did not impact Plaintiff's operations, that Anderson's doctor may have been the reason that his FMLA certification was untimely, and notable here, that Plaintiff's attendance policy was "unfair" to Anderson because it did not require a suspension before termination. (*Id.*) The Arbitrator's award also stated that he

3

had the power to reinstate Anderson, over Plaintiff's arguments, because Plaintiff "did not clearly show that reinstatement was ignored during the grievance process." (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed its Complaint on April 1, 2024, seeking to vacate the arbitration award because (1) the Arbitrator exceeded his powers by adding a requirement to the CBA that Anderson be suspended prior to termination and (2) the Arbitrator exceeded his powers by granting greater relief than what was requested in the grievance. (Compl., Doc. 1.) On June 3, 2024, Defendant filed its Answer, including a counterclaim to enforce the arbitration award. (Answer and Counterclaim, Doc. 6.) Plaintiff and Defendant then both moved for summary judgment as to their respective claims on October 7, 2024. (Plaintiff's Motion, Doc. 11; Defendant's Motion, Doc. 12.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's

4

position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Plaintiff brings claims seeking to vacate the arbitration award and Defendant brings a counterclaim seeking to enforce the arbitration award. (Compl., Doc. 1; Answer and Counterclaim, Doc. 6.) The Federal Arbitration Act "expresses a federal policy favoring arbitration." *Samaan v. Gen. Dynamics Land Sys.*, 835 F.3d 593, 600 (6th Cir. 2016) (quotation omitted). Courts may not reconsider the merits of an arbitration award even when parties allege the award rests on a misinterpretation of the contract. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Id.* (quoting *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008)). Thus, the scope of this Court's review is limited to three questions: (1) "Did the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration?"; (2) "Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?"; and (3) "[I]n resolving any legal or factual disputes in the case, was the arbitrator 'arguably

5

construing or applying the contract?'" *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007). The parties each move for summary judgment, disputing whether the Arbitrator acted within his authority and whether he arguably construed the CBA. (*See* Plaintiff's Motion, Doc. 11; Defendant's Motion, Doc. 12.) The Court addresses each question in turn.

I.   **The Arbitrator's Authority**

The parties first dispute whether the Arbitrator exceeded his authority. (Plaintiff's Motion, Doc. 11, Pg. ID 428; Defendant's Motion, Doc. 12, Pg ID 454.) "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Mich. Family Res., Inc.*, 475 F.3d at 756. "This approach severely curtails the scope of authority concept such that an award should not be vacated unless an arbitrator reaches a question not committed to him by the parties." *Equitable Res., Inc. v. United Steel, Local 8-512*, 621 F.3d 538, 545 (6th Cir. 2010) (quoting *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 414-15 (6th Cir. 2008)). The arbitrator, however, does not need to narrowly stay within the technical limits of the dispute submitted by the parties. *Triple Canopy, Inc. v. United Gov't Sec. Officer s of Am., Loc. 206 Union*, No. 23-15, 2024 U.S. App. LEXIS 1848, at *8 (6th Cir. Jan. 26, 2024) (quoting *Johnston Boiler Co. v. Loc. Lodge No. 893, Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL – CIO*, 753 F.2d 40, 43 (6th Cir. 1985)).

Plaintiff argues that the Arbitrator exceeded the scope of the question by considering whether Plaintiff's attendance policy was fair. (Plaintiff's Motion, Doc. 11,

6

Pg. ID 423.) Again, the question submitted to the Arbitrator was whether there was just cause to terminate Anderson. (Arbitration Award, Doc. 4, Pg. ID 249.) If the Court were to adopt Plaintiff's argument, once the Arbitrator found that Anderson accrued more than eight points under the attendance policy, the Arbitrator's inquiry should have ended. (Plaintiff's Motion, Doc. 11, Pg. ID 423.) Defendant responds by arguing that interpretive error by an arbitrator does not warrant vacating an award and that an arbitrator may consider substantive requirements under a CBA's "just cause" provision. (Defendant's Response, Doc. 14, Pg. ID 609.)

After a review of the CBA, the Court finds Defendant's arguments more persuasive. Neither the CBA nor the attendance policy contained any provision expressly limiting the Arbitrator's ability to consider fairness in his just cause determination. *See Eberhand Foods, Inc. v. Handy*, 868 F.2d 890, 893 (6th Cir. 1989) (finding that the just cause provision of the CBA "allow[ed] the arbitrator to weigh considerations of fairness when reviewing" work rules agreed to by the parties). Accordingly, the Court must defer to the Arbitrator's interpretation of the CBA which "permit[ted] arbitration of the fairness of the remedy, once a violation of the work rules is found." *Id.* Plaintiff's argument that the Arbitrator exceeded the scope of the question is more akin to alleging an interpretive error and is thus not reviewable by this Court. Therefore, the Arbitrator did not exceed his authority by considering the fairness of Plaintiff's attendance policy.

## II. The Arbitrator's Reasonable Interpretation of the CBA

Having determined that the Arbitrator acted within the scope of his authority, the Court now turns to whether the Arbitrator arguably construed the CBA. An arbitrator's

award is legitimate as long as it "draws its essence from the [CBA], and is not merely his own brand of industrial justice." *United Paperworkers Int'l Union*, 484 U.S at 36 (quotations omitted). An arbitrator's award fails to draw its essence from an agreement when: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Dallas & Mavis Forwarding Co. v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 972 F.2d 129, 134 (6th Cir. 1992). When an arbitrator's award is drawn from outside the CBA, "courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The parties dispute whether the Arbitrator reasonably construed the CBA when he considered a suspension requirement in the attendance policy and when he reinstated Anderson. (*See* Plaintiff's Motion, Doc. 11; Defendant's Motion, Doc. 12.) The Court will first discuss the Arbitrator's suspension requirement and then continue to Anderson's reinstatement.

### a. The Arbitrator's Suspension Requirement

Plaintiff enacted an attendance policy in which an employee who misses work is assigned a point value corresponding to the severity of his absence. (Attendance Policy, Doc. 1-3, Pg. ID 111.) Once an employee accrues two points, he receives a verbal warning, after four points, a written warning, at six points, a final warning, and then at eight or more points, he is terminated. (*Id.* at Pg. ID 112.) The Arbitrator, however, took issue with the attendance policy, noting that it fails to allow a "more traditional and frankly fairer

8

approach to progressive discipline" by requiring a suspension before discharge. (Arbitration Award, Doc. 4, Pg. ID 259.) The Arbitrator pointed out that Anderson was never issued a suspension, and that "there is nothing in the record to clearly explain why Plaintiff's absence policy skips suspension in the hierarchy of discipline." (*Id.*) Accordingly, the Arbitrator ordered Anderson's reinstatement. (*Id.*)

In analyzing the Arbitrator's award, the Court finds *Cargill, Inc. v. General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local Union No. 436* instructive. No. 1:10-CV-1183, 2011 U.S. Dist. LEXIS 380 (N.D. Ohio Jan. 4, 2011). In *Cargill*, an employee was terminated for stealing items out of a coworker's locker. *Id.* at * 2. The employee filed a grievance relating to the termination, and the issue was brought to arbitration. *Id.* at *2-3. Although the controlling CBA did not explicitly include a discipline policy, it did include a section granting the employer "wide-ranging authority to maintain and enforce rules." *Id.* at *7. Despite this section, the arbitrator sustained the grievance, imposing his own progressive discipline structure not provided for in the CBA or employer's policies. *Id.* at *6-7. Specifically, the Court found that the arbitrator's "random" imposition of his own progressive discipline incorporating a suspension was "arbitrary and capricious." *Id.* at *13. Accordingly, the Court vacated the award finding that it did not draw its essence from the CBA. *Id.* at *7-8.

The current matter closely resembles *Cargill*. The CBA allowed Plaintiff to both create work rules and enforce them. (CBA, Doc. 1-2, Pg. ID 63.) In exercising this discretion, Plaintiff implemented the attendance policy with progressive discipline. (Attendance Policy, Doc. 1-3, Pg. ID 112.) By inserting a suspension requirement into

9

Plaintiff's attendance policy, the Arbitrator's award plainly imposes an additional requirement that "reflect[s] nothing other than the Arbitrator's own personal notions of fairness, and his own sense of industrial justice." *Cargill, Inc.*, 2011 U.S. Dist. LEXIS 380, at *13. Thus, the award should be vacated.

Defendant alternatively contends that the Arbitrator arguably construed the CBA and therefore the Court must enforce the arbitration order. (Defendant's Motion, Doc. 12, Pg. ID 456; Defendant's Response, Doc. 14, Pg. ID 612.) Under the "arguably construed" analysis, the Court "focuses on a single question: did the arbitrator appear to be engaged in interpreting the agreement or agreements before him?" *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 901 (6th Cir. 2012) (cleaned up). If so, then the Court's inquiry ends. *Id.* But, if it is unclear, the Court will presume the arbitrator was engaged in interpreting the agreement unless "the arbitrator was so ignorant of the contract's plain language that any contention that the arbitrator was construing the contract is implausible." *Id.* at 901-02 (quotations omitted). An arbitrator only steps outside the limits of the "arguably construing" inquiry when he untethers the analysis from the CBA and dispenses his own brand of justice. *Id.* at 902.

Defendant specifically argues that since the Arbitrator referred to the CBA and analyzed some of its provisions in his order, that he arguably construed the CBA. (Defendant's Response, Doc. 14, Pg. ID 612.) This argument fails. Here, even if the Arbitrator did apply some aspects of the CBA, his suspension requirement had no basis in the CBA's or attendance policy's plain language and instead he relied on his own notions of fairness. (*See* Arbitration Award, Doc. 4, Pg. ID 259.) Thus, the award did not

10

draw its essence from the agreement and should be vacated. *See Beacon Journal Publ. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997) (finding that the arbitrator did not arguably construe the agreement because he imposed an additional term not found in the agreement).

### b. Anderson's Reinstatement

The parties also dispute whether the Arbitrator arguably construed the CBA when he reinstated Anderson. (Plaintiff's Motion, Doc. 11, Pg. ID 428; Defendant's Motion, Doc. 12, Pg. ID 454.) During the arbitration proceedings, Plaintiff argued that the Arbitrator could not order Anderson's reinstatement because Section 9(A)(3) of the CBA provided that "no issue may be raised or contention made at the hearing which could have been, but was not, raised nor made in the presentation of the Grievance pursuant to Step 3 [of the grievance procedure]." (Arbitration Award, Doc. 4, Pg. ID 259; CBA, Doc. 1-2, Pg. ID 58.) The Arbitrator rejected Plaintiff's argument by finding that Plaintiff did not clearly show reinstatement was ignored during Step 3 of the grievance process. (Arbitration Award, Doc. 4, Pg. ID 259.)

The Arbitrator, however, ignored another provision of Section 9 which plainly states that the arbitrator may not "grant any relief that [is] greater than that which was specifically requested in the [g]rievance when it was reduced to writing." (CBA, Doc. 1-2, Pg. ID 58.) In Anderson's grievance, when asked "[w]hat do we want for the aggrieved to be made whole?" Defendant responded, "any hours missed due to [Anderson's] unjust firing." (Grievance, Doc. 4, Pg. ID 261.) In the Arbitrator's award, however, he found that Anderson's reinstatement was the "main point for this case" and that "[i]t is well-settled

11

that an employee who is discharged without just cause is entitled to a 'make-whole' remedy, meaning that the arbitrator can put the employee back into the same position they would have been at but for the discharge." (Arbitration Award, Doc. 4, Pg. ID 259.)

The Court finds that the Arbitrator's award failed to draw its essence from the CBA when he reinstated Anderson. First, the arbitration award plainly conflicts with the CBA. Anderson's grievance only requested backpay. (Grievance, Doc. 4, Pg. ID 261.) So, under Section 9(A)(3) of the CBA, the greatest award the Arbitrator could grant Anderson was the full value of backpay for any work time that he missed. Despite this language, the Arbitrator exceeded the requested relief by granting Anderson reinstatement in addition to backpay. (Arbitration Award, Doc. 4, Pg. ID 259.)

In opposition, Defendant moves to enforce Anderson's reinstatement under several arguments. First, Defendant urges the Court to adopt the Arbitrator's logic that any "make whole" remedy must include reinstatement. (Defendant's Motion, Doc. 12, Pg. ID 455.) Although reinstatement could potentially make a wrongfully terminated employee "whole," this does not negate the fact that Anderson only requested backpay in his grievance. Although the Court must grant the Arbitrator deference, this does not allow the Arbitrator to neglect the CBA's express provisions. *United Paperworkers Int'l Union*, 484 U.S at 38. Second, Defendant argues that "[a]n arbitrator's authority is not strictly confined to the 'technical limits of the submission.'" (Defendant's Motion, Doc. 12, Pg. ID 455 (quoting *Int'l Ass'n of Machinists & Aero. Workers v. TVA*, 155 F.3d 767, 772 (6th Cir. 1998)).) This argument is misplaced. The question submitted to the Arbitrator is not what limited his ability to reinstate Anderson. Instead, it was the CBA's provision

12

preventing the Arbitrator from granting greater relief than what was requested in the grievance. (CBA, Doc. 1-2, Pg. ID 58.) In Defendant's third attempt, it argues that union officials are generally not attorneys and therefore grievances should not be held to high technical standards. (Defendant's Motion, Doc. 12, Pg. ID 455.) The Court, however, declines to modify Anderson's grievance simply because the drafter was not an attorney. In light of these considerations, the Arbitrator's award exceeded the scope of Anderson's grievance and thus the award failed to draw its essence from the CBA.

## CONCLUSION

Although the Arbitrator did not act outside his authority when considering the fairness of Plaintiff's attendance policy, the award did fail to draw its essence from the CBA. Accordingly, the Court **ORDERS** the following:

1. Plaintiff's Motion for Summary Judgment (Doc. 11) is **GRANTED**;
2. Defendant's Motion for Summary Judgment (Doc. 12) is **DENIED**;
3. The Arbitrator's award of March 18, 2024, is **VACATED**; and
4. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND